DOMINIC LEMAR LAWSON,

     Plaintiff,

v.

                                   CASE NO: 3:25-cv-1352

SHERIFF BILL LEEPER, in his official capacity
as Sheriff of Nassau County Sheriff's Office;
ROBERT JACKSON, Individually and
JASON ROYAL, individually.

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff DOMINIC LEMAR LAWSON ("Plaintiff" or Mr. Lawson"), by

and through the undersigned counsel, and hereby files this Complaint and Demand

for Jury Trial against Defendants, ROBERT JACKSON ("Jackson") in his individual

capacity and JASON ROYAL ("Royal") (jointly referred to as "Officers") and

SHERIFF BILL LEEPER ("Leeper"), in his official capacity as Sheriff of the Nassau

County Sheriff's Office (all Defendants are collectively referred to herein as

"Defendants"). In support of his claims, Plaintiff alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff is an adult non-Hispanic male resident of Yulee, Nassau County, Florida.

2.     At all times relevant, Defendant Leeper was and remains the Sheriff in charge of the Nassau County Sheriff's Office ("NCSO") and is responsible for overseeing Nassau County's police functions, including the management of officers employed by NCSO.

3.     Defendant Jackson, at all times relevant, was a deputy employed with the NCSO and was acting under color of law. Defendant Jackson is sui juris and resides in the State Florida.

4.     Defendant Royal, at all times relevant, was a deputy employed with the NCSO and was acting under color of law. Defendant Royal is sui juris and resides in the State Florida.

5.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. 1343, 28 U.S.C. § 1367, 42 U.S.C §§ 1983 and 1988.

6.     Venue is proper in this Court as the events that give rise to these claims occurred in Nassau County, Florida.

7.     Plaintiff has satisfied all conditions precedent prior to bringing this claim and this claim is timely brought.

# FACTUAL BACKGROUND

8. At the time of the incident that gives rise to these claims, on or about November 9, 2023, Plaintiff was employed as a semi-truck driver.

9. On that day, Plaintiff, a veteran, had a scheduled appointment with the Nassau County Veterans Services Office concerning his disability benefits.

10. Plaintiff legally parked his semi-truck in a parking lot near a shopping area within the vicinity 463785 SR 200, Yulee, Nassau County, Florida, and began walking toward the road to wait for an Uber to take him to his appointment with the Veterans Services office.

11. Plaintiff's pace was normal. He was not running nor was he otherwise exhibiting any suspicious behavior.

12. The Officers approached Plaintiff and one of the Officers yelled "come here and talk to us real quick".

13. Plaintiff, understanding that his was a consensual encounter, walked toward the Officers and asked what they wanted to talk to him about.

14. Almost immediately, the Officers asked the Plaintiff to hang up his phone call and Plaintiff declined.

15. Plaintiff did not have to hang up the phone because at that point this was a consensual encounter.

16. Immediately, Officer Royal asked "you got ID on you?

17.     In response, Plaintiff asked for the reason why the Officers were asking about his identification.

18.     At that point, one of the Officers told Plaintiff that they were investigating a shoplifting incident at a nearby store.

19.     In response, Plaintiff, pointing toward his truck, told the officers that he had been in his truck and that he had not been at any store and did not steal anything.

20.     One of the Officers, interrupting Plaintiff aggressively repeated the question "Do you have ID on you?"

21.     Plaintiff responded that he did but that he did not have to provide his identification.

22.     Legally, Plaintiff did not have to provide any identification to the officers at that moment.

23.     This was because at that point there was no reasonable suspicion that Plaintiff had committed any crime, and Plaintiff could hear, on the police radio, the description of a suspect alleged to have committed a petty theft at the nearby Gate gas station who did not match Plaintiff's description.

24.     Before Plaintiff could even finish his sentence, both Officers immediately grabbed Plaintiff's arms and began to twist them aggressively while aggressively telling Plaintiff "you're going to", in reference to providing his identification card.

25.     Officer Royal then immediately placed Plaintiff in a chokehold while Officer Jackso continued to twist Plaintiff's arms behind him.

26.     While Officer Jackson was still holding Plaintiff and Officer Royal was still holding the chokehold, the Officers slammed Plaintiff on the ground, and Officer Royal positioned his body on top of Plaintiff while maintaining the chokehold, obstructing Plaintiff's airways for more than 15 seconds.

27.     Plaintiff, while on the ground, exclaimed many times that he could not breathe but the Officers did not release him.

28.     The Officers ultimately released the hold on Plaintiff, helped him up from the ground, pushed his head against the vehicle and handcuffed him.

29.     The Officers placed Plaintiff under arrest for resisting arrest without violence.

30.     Upon review of the Officer Royal's body worn camera footage, it is evident that it took approximately 20 seconds from the time that Plaintiff walked over to the Officers to the time that the Officers escalated the interaction and unjustifiably used force against Plaintiff.

31.     The Officers' actions caused Plaintiff serious injuries including abrasions to his neck and head and injury to his eye, and the aggravation of his other medical conditions including but not limited to the aggravation of his heart condition.

32.     While Plaintiff was inside the police vehicle, due to the battery perpetrated on him by the Officers, his heart rate became elevated and Plaintiff began experiencing chest pains, requiring medical attention.

33.     Plaintiff was transported to Baptist Medical Center for treatment.

34.     At the hospital, the Officers made false statements to the medial staff when they inquired about Plaintiff injuries, information the medial staff that Plaintiff already had the abrasions to his head and neck prior to their interactions with him.

35.     Ultimately, Plaintiff was transported to the Nassau County Jail upon his discharge from Baptist Medical Center.

**False Statements by Officers**

36.     In his official report, Officer Jackson falsely stated that Plaintiff matched the description of the individual who was accused of stealing milkshake at the gate gas station, specifically omitting details that were provided by the dispatcher.

37.     Specifically, Officer Jackson stated in his report that Plaintiff was a Hispanic male wearing black clothing and a backpack, choosing the specific details that pertain to Plaintiff and ignoring blatant details that clearly showed that Plaintiff could not reasonably be the suspect of that petit theft.

38.     The description of the shoplifting suspect and incident was as follows: a Hispanic male wearing a black beanie, black pants, black hoodie and carrying a black backpack left the store with a milkshake without paying for it.

39.     The color of the backpack and the fact that Plaintiff was wearing shorts were sufficient to indicate that Plaintiff would not reasonably be the person who had committed the shoplifting crime, moments earlier.

40.     Plaintiff on the other was wearing a black t-shirt, shorts, and a light gray backpack and was talking on the phone using a headset.

41.     Plaintiff did not have a black backpack, a black hoodie or beanie.

42.     Moreover, Plaintiff is not Hispanic, nor does he appear to be.

43.     Plaintiff was not carrying a milkshake nor was there any indication that he had been at the Gate gas station.

44.     In fact, Plaintiff specifically told the officers that he had just come from his truck and was going to his "VA appointment".

45.     Plaintiff's truck was also visible to the Officers.

46.     Further, the following day, Officer Royal completed a Response to Resistance Law Enforcement Officer Report. In this report, Officer Royal identified Plaintiff as a non-Hispanic black male even though Officer Jackson indicated that they had stopped Plaintiff because the report called for a Hispanic suspect.

47. Further, Officer Royal falsely reported that Plaintiff was under the influence of "alcohol and unknown drugs" even though Plaintiff was not and that there was no indication of intoxication whatsoever during his interaction with the Officers.

48. Additionally, Officer Royal made materially false statements in his Response to Resistance Law Enforcement Officer Report including that Plaintiff used active resistance against him and that he attempted to deescalate the situation.

49. This was clearly false as, upon review of the body worn camera footage, it took less than 20 seconds from the initial interaction to the time that the Officers unjustifiable use of force against Plaintiff.

**Arrest of the Actual Suspect**

50. At the same time, another officer had detained an individual who matched the description of the shoplifting suspect.

51. That individual, Ayden Dale Winston Miles, matched the exact description that was provided by the dispatcher including the fact that he was wearing a black beanie, black shirt, black pants and black backpack.

52. Mr. Miles had a history of petty theft and was apprehended within the vicinity of the Gate gas station.

53.   Mr. Miles was prosecuted for that crime in case number 2023-MM-000795A in the County Court of the Fourth Judicial Circuit in and for Nassau County, Florida.

54.   On February 12, 2024, Mr. Miles was adjudicated guilty in case number 2023-MM-000795A.

**The State Attorney's Office Elected Not To Prosecute Plaintiff**

55.   Mr. Lawson was initially charged with resisting officer without violence to his or her person in violation of Section 843.02, Florida Statutes.

56.   On or about January 8, 2024, the Office of the State attorney for the Fourth Judicial Circuit in and for Nassau County filed a Nolle Prosequi indicating that they would not be prosecuting the case against Mr. Lawson.

**Lack of Probable Cause**

57.   Almost immediately upon approaching Plaintiff, the Officers violently detained Plaintiff without any reasonable suspicion that Plaintiff was engaged in criminal activity.

58.   The Officers inquired as follows: "you got ID on you."

59.   Plaintiff responded that he did but that he was not required to provide it, understanding that he was having a conversation, as the officers' initial statement to Plaintiff was "come here and talk to us."

60.     At no point did the officers give Plaintiff any lawful command nor did they ever have any reasonable suspicion that Plaintiff had committed a crime.

61.     In fact, the officers never gave Mr. Lawson any command.

62.     The Officers had no probable cause to arrest Plaintiff for the crime of resisting arrest without violence.

63.     Further, the level of force used by the Officers on Plaintiff was unjustified, unnecessary and objectively unreasonable as Plaintiff posed no threat to the Officers.

64.     The damages suffered by Mr. Lawson were a direct result of the violation of his clearly established constitutional rights by Defendants and the customs, policies and practices of Defendant Leeper which allowed such violations to occur.

### NCSO's Customs, Policies and Practices

65.     Defendant Leeper, through the NCSO customs, policies and procedures, failed to ensure that NCSO had appropriate safeguards in place to protect citizens against its law enforcement officers' routine constitutional violations.

66.     Further, Leeper's customs, policies and practices of not properly investigating wrongdoing and illegal acts by the NCSO officers and not holding

them accountable for their wrongful acts, in turn condones their behaviors resulting in these officers' continuing violations of citizens' rights.

67. Evidently, in the case involving Mr. Lawson, Officer Royal submitted a Response to Resistance Law enforcement Officer Report, and within an hour of the submission, his sergeant had already determined that the interaction "looks to be within policy."

68. This use of force report was accepted without doing any investigation to determine whether the content of the report was substantiated by the Body Worn Camera footage.

69. The customs and practices of NCSO in failing to properly investigate and review their officers' use of force reports leads to a practice of officers making false statements in those reports with impunity, as it is clear to them that their word will be taken as gospel and not subjected to any kind of scrutiny.

70. Had the NCSO sergeant and anyone else at NCSO taken the time to review the Body Worn Camera footage, they would have determined that the use of force by Officers Jackson and Royal was unjustified and that the Body Worn Camera footage conflicted with the written statements.

71. Even a review of the reports filed by both Officers involved in this incident would have shown conflicting statement concerning Plaintiff's race, as Jackson's report indicates that he was Hispanic for purposes of justifying their stop

of Plaintiff and the Royal's identified him as a black Hispanic male in the use of force report.

72.     Leeper as sheriff of NCSO instituted and allowed customs, policies of practices of allowing the officers of the NCSO to use excessive force against civilians without justification and use false statements in their reports in support of the false arrests of civilians.

73.     This is evident, as it was clear in this instance and many others that Officer Jackson willingly chooses to violate the Fourth Amendment because he does not respect it.

74.     Specifically, in a Body Worn Camera footage now made public, Officer Jackson was observed during a vehicular stop stating: "it's probably like some Fourth Amendment bullshit", prior to exiting his vehicle, in reference to a civilian he had just stopped, immediately after insinuating that he would likely be using force against the civilian.

75.     Despite the above, Officer Jackson remains employed with the NCSO.

76.     In 2018, an inmate at the NCSO jail alleged that he reported over the course of many months the abuse that he endured from the officers from the NCSO, including the fact that the NCSO officers sprayed him with pepper spray, slammed

him on the floor and kneed him in the back. Yet, nothing was done to investigate these incidents and discipline these officers.[1]

77.     These incidents continue to occur even now because NCSO does not discipline and officers who provide false statements in their reports and use excessive force unjustifiably in the course of their duties.

78.     In 2025, NCSO officer William Woods was arrested and charged with battery and using unnecessary and unjustified force on an intoxicated person and subsequently making false statements on his official report to conceal his unjustified us of force.

79.     The only reason why NCSO investigated officer Woods was because the Office of the Public Defendant who represented the individual arrested by officer Woods called and demanded that they investigate the clear conflict between officer Wood's statement adj the body worn camera footage.

80.     Leeper's policies condoned these unlawful behaviors by the NCSO officers by blindly relying on officers' self-reporting and not properly investigating use of force incidents to ensure that the body worn camera footage does not conflict with the officers' self-reporting.

81.     Woods was ultimately charged with official misconduct and battery.

---

[1] See Generally, *Greer v. Leeper et al.*, 3:18-cv-193 (M.D. Fla. 2018).

82. Incidents such as the incidents involving Mr. Lawson occur because Leeper takes no action to seriously discipline officers like Jackson and Royal who violate citizens' rights and place and use excessive force in the line of duty regardless to effectuate arrests regardless of whether probable cause exists.

83. The violent actions of the NCSO officers are so widespread and known throughout the community that citizens have resorted to reporting these issues in public forum because nothing was being done to terminate officers who were the subject of Internal Affairs complaints submitted by citizens.

84. For instance, an individual indicated that "Bill Leeper doesn't hold upper echelon accountable. […] he is only worried about smiling for the camera and pretending he doesn't know what goes on."

85. Others have reported that they were unjustly tased and subjected to unwarranted and excessive force by the NCSO, and despite reporting the same, the officers did not face discipline.

86. Further, even when Leeper chooses to investigate the actions of the NCSPO officers, the NCSO is not transparent and takes steps to further protect the officers even when they are engaged in wrongful conduct, making it impossible for these officers to face any kind of scrutiny and accountability.

87.    For instance, this past January, even though Leeper announced that six of his deputies were under investigation, he refused to name the officers and refused to indicate what acts the NCSO was investigating.

88.    The only information provided by Leeper was that there was "an active investigation involving [4 sergeants and 2 deputies] and that the individuals were on paid administrative leave pending the investigation. [2]

89.    These are just few examples of the customs and practices that are widespread within the NCSO, which routinely results in the violation of civilians' constitutional rights by NCSO officers.

90.    As a direct result of these policies, customs and practices, Plaintiff's clearly established constitutional rights were violated, resulting in damages to Plaintiff.

**COUNT ONE**
**FALSE ARREST**
**Violation of Fourth And Fourteenth Amendments**
**42 U.S.C. § 1983**
**(Officers Jackson and Royal)**

91.    Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 90 above as if fully set forth herein.

---

[2] 6 Nassau County Sheriff's Office employees placed on leave pending investigation, Isabella Casapao, First Coast News, https://www.firstcoastnews.com/article/news/local/6-nassau-county-sheriffs-office-employees-placed-on-leave-pending-active-investigation/77-9652d3c6-5815-4282-b787-bf31677aa0a8?utm_source=chatgpt.com (last visited Nov. 8, 2025).

92. The Fourth Amendment to the United States Constitution provides as follows:

[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

93. Thus, a warrantless arrest without probable cause violates clearly established right set forth by the United States Constitution and can serve as a basis for a Section 1983 claim.

94. At no point during the interaction with Mr. Lawson did Officers Jackson and Royal have a warrant for Mr. Lawson's arrest, nor did she have any probable cause to effectuate his arrest.

95. The Officers had no lawful basis for their initial approach of Plaintiff because Plaintiff did not match the description of the shoplifting suspect.

96. Further, the officers never actually demanded that Plaintiff produce his identification but rather only asked whether he had one on his person. Their question was not a lawful command.

97. Regardless, even if they had made a demand for his identification, any refusal to produce such identification absent reasonable suspicion was within Plaintiff's constitutional rights and cannot form the basis for a resisting arrest charge.

98. Further, the arrest was not objectively reasonable under the totality of the circumstances.

99. The Officers instead fabricated the basis for Mr. Lawson's arrest and made false statements in their sworn statements in support of their false arrest of Mr. Lawson.

100. Officer Jackson's report contained materially false statements to justify the unlawful arrest by stating that Plaintiff matched the description of the alleged shoplifter, omitting crucial details that clearly distinguished Plaintiff from the actual suspect and indicating that Plaintiff was combative by "tens[ing] his posture and squar[ing] off" when plaintiff was not.

101. The Officers, acting under color of law, deprived Plaintiff of his rights under the Fourth Amendment of the United States Constitution, which are secured through the Fourteenth Amendment, by maliciously placing Plaintiff under arrest without a warrant or any probable cause to believe that Plaintiff committed any crime.

102. The acts and/or omissions of the Officers were willful, wanton, reckless, intentional, conscious and malicious, and in deliberate disregard for Mr. Lawson's constitutional rights.

103. As a direct and proximate result of the actions of by the Officers, Plaintiff has suffered and will continue to suffer damages, including physical injuries

including but limited to abrasion to his neck and head, economic damages, emotional distress, Post-traumatic Stress Disorder (PTSD), personal humiliation, mental anguish, exacerbation of his medical conditions, and embarrassment, justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against the Officers.

**COUNT TWO**
**EXCESSIVE FORCE**
**Violation of Fourth And Fourteenth Amendments**
**42 U.S.C. § 1983**
**(Officers Jackson and Royal)**

104.   Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 90 above as it fully set forth herein.

105.   The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

106.   Defendants Jackson and Royal, acting under color of law, deprived Plaintiff of his rights under the Fourth Amendment of the United States Constitution, which are secured through the Fourteenth Amendment, by maliciously subjecting him to unjustified and excessive use of force.

107. The force was unjustified as Plaintiff was not resisting arrest nor was he is disobeying any lawful commands.

108. Further, at no point did Plaintiff display any violent behavior and despite Officer Jackson's false statements that Plaintiff had tensed his posture and squared off, the Body Worn Camera clearly shows that Plaintiff was not doing so.

109. Further tensing off one's shoulders when they are being unfairly accused by law enforcement officers is not sufficient justification for the level of force used in this circumstance.

110. The acts and/or omissions of Defendants Jackson and Royal were willful, wanton, reckless, intentional, conscious and malicious, and in deliberate disregard for Mr. Lawson's constitutional rights.

111. As a direct and proximate result of the actions of by the Officers, Plaintiff has suffered and will continue to suffer damages, including physical injuries including but limited to abrasions to his neck and head, economic damages, emotional distress, Post-traumatic Stress Disorder (PTSD), personal humiliation, mental anguish, exacerbation of his medical conditions, and embarrassment, justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against the Officers.

**COUNT THREE**
**False Arrest**
**Violation of Fourth and Fourteenth Amendments**
**42 U.S.C. § 1983**

**(Defendant Leeper)**

112.   Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 90 above as it fully set forth herein.

113.   As a citizen of the United States, Mr. Lawson is protected against unlawful search and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

114.   The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

115.   At no point during the interaction with Mr. Lawson did the Officers have any legal basis to detain or arrest Mr. Lawson.

116.   Defendant Leeper knew that the officers were often making illegal arrests but ratified and condoned their illegal conduct by the NCSO customs, policies and practices of failing to discipline their employees who engage in constitutional rights violations and providing minimal punishment, in any, for egregious acts involving dishonesty.

117.   Further, Defendants Leeper failed to adequately train their employees so that they do not engage in such constitutional violations.

118. As a result of these procedures, customs, policies and practices maintained by Defendant Leeper, individuals in Nassau County, including Plaintiff are routinely subjected to unlawful search and seizures and the NCSO officers are allowed to continue in these constitutional violations with impunity.

119. As a direct and proximate result of the actions and/or inactions of Defendant Leeper, Plaintiff has suffered and will continue to suffer damages, including physical injuries including but not limited to abrasions to his neck and head, economic damages, emotional distress, personal humiliation, Post-Traumatic Stress Disorder (PTSD), aggravation of his medical condition, mental anguish, and embarrassment justifying an award including, but not limited to, economic, compensatory, and consequential damages against the Defendant Leeper.

### COUNT FOUR
### EXCESSIVE FORCE
### Violation of Fourth and Fourteenth Amendments
### 42 U.S.C. § 1983
### (Defendant Leeper)

120. Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 90 above as it fully set forth herein.

121. As a citizen of the United States, Mr. Lawson is protected against unreasonable and excessive force as guaranteed by the Fourth Amendment to the United States Constitution.

122. The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

123. At no point during the interaction with Mr. Lawson did Defendant have any justifiable reason to subject Mr. Lawson to such excessive force and the force used against Plaintiff was objectively unreasonable.

124. Defendant Leeper knew that the officers were engaging in excessive use of force and falsification of documents to conceal such illegal acts, and but ratified and condoned their illegal conduct by NCSO customs, policies and practices of failing to discipline their employees who engage in constitutional rights violations and providing minimal punishment for egregious acts involving dishonesty.

125. Furthermore, use of force reports submitted by these officers are subject to no scrutiny and there is no real determination of the accuracy of these reports, and no effort to corroborate the statements made in the NCSO officers' self-reporting.

126. Further, Defendant Leeper fails to adequately train NCSO employees so that they do not engage in such constitutional violations.

127. As a result of these procedures, customs, policies and practices maintained by Defendant Leeper, individuals in Nassau County, including Plaintiff

are routinely subjected to unlawful search and seizures and the NCSO officers are allowed to continue in these constitutional violations with impunity.

128.  As a direct and proximate result of the actions and/or inactions of Defendant Leeper, Plaintiff has suffered and will continue to suffer damages, including physical injuries including but not limited to abrasions to his neck and head, economic damages, emotional distress, personal humiliation, Post-Traumatic Stress Disorder (PTSD), mental anguish, aggravation of his medical condition, and embarrassment justifying an award including, but not limited to, economic, compensatory, and consequential damages against the Defendant Leeper.

## COUNT FIVE
## BATTERY
### (Officers Jackson and Royal)

129.  Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 90 above as it fully set forth herein.

130.  Defendants Jackson and Royal intentionally touched or struck Plaintiff against his will, when they grabbed Plaintiff by his arms, twisting them aggressively, placed Plaintiff in a chokehold, obstructing his airways for more than 15 seconds and slammed him on the ground and positioning his body on top of Plaintiff as he is obstructing his airways.

131.  Defendants Jackson and Royal had no legal justification for this physical contact as Plaintiff was not engaged in any criminal activity, was not

disobeying any lawful command and was not violent or aggressive toward the Officers.

132.   Defendants Jackson and Royal's actions were willful, wanton, intentional, conscious, and malicious and in deliberate disregard for Plaintiff's clearly established rights.

133.   As a direct and proximate result of Defendants Jackson and Royal's conduct, Plaintiff suffered serious physical injuries and the exacerbation of his medical condition, requiring hospitalization.

134.   As a direct and proximate result of the Officers' actions, plaintiff has suffered and will continue to suffer damages, including physical injuries including but not limited to abrasions to his neck and head, economic damages, emotional distress, personal humiliation, Post-Traumatic Stress Disorder (PTSD), mental anguish, exacerbation of his medical condition, and embarrassment justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against the Defendants Jackson and Royal.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against the Defendants herein:

1) Enter judgment in favor of Plaintiff on all Counts herein;

2) Award Plaintiff economic, compensatory, and other damages as determined

by a jury for violation of his federal civil rights including, but not limited to mental pain and suffering, loss of earnings, and expenses;

3) Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest;

4) Award Plaintiff punitive damages against Defendants Robert Jackson and Jason Royal; and

5) Such other or further equitable and monetary relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims in this Complaint.

Dated:  November 9, 2025                    Respectfully Submitted

**AZOR LAW PLLC**

*/s/Naphtalie Azor*
Naphtalie Azor, Esq.
Fla. Bar No. 1024060
AZOR LAW, PLLC
200 N Laura St., 9th FL
Jacksonville, FL 32202
(904) 902-3061(phone)
904-680-2227
nazor@azorlaw.com
info@azorlaw.com